Insurance Co. *v.* Railroad.

(*Knoxville.* September 30, 1896.)

1. PRINCIPAL AND AGENT. *Delegation of agent's authority.*

   An order by one broker to another to purchase cotton for a specified company, does not make the latter the owner of cotton purchased in his own name, by a third broker employed without authority by the second broker to fill the order. (*Post, pp. 327–331.*)

   Case cited and approved: Lancaster Mills *v.* Merchants, etc., Co., 89 Tenn., 61.

2. SUPREME COURT. *Not bound by conclusions of law drawn by Court of Chancery Appeals.*

   A conclusion drawn by the Court of Chancery Appeals from certain facts found by it, that the ownership of cotton in suit was in a specified company, is a conclusion of law which is not binding upon this Court. (*Post, pp. 329–332.*)

---

FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County. T. M. McCONNELL, Ch.

PRITCHARD & SIZER for Insurance Company.

COOKE, SWANEY & COOKE for Railroad.

BEARD, J. This bill seeks to subrogate complainant, an incorporated insurance company, to the

rights of the owner of one hundred and three bales of cotton, burned while in the constructive possession of the defendant railway company, under bills of lading issued therefor, and which were covered at the time of the fire, as is alleged, by an open policy issued by complainant to the owner, the Thorndike Company, of Massachusetts. The bill avers the payment of the loss by the insurance company to the Thorndike Company, and rests the right of subrogation upon the ground that the primary liability for this loss was on the railway company. On the trial of the case, the Chancellor dismissed the bill, and, upon a hearing, the Court of Chancery Appeals affirmed this decree of dismissal. It is now before us on appeal from the last decree.

The facts, as found by the Court of Chancery Appeals, so far as they affect the question—the answer to which is held to be conclusive of this case —are as follows: The complainant, some time before the fire referred to, had issued to the firm of Bliss, Fabyan & Co. an open policy of marine insurance, in which it agreed to insure this firm "for whom it might concern," in case of loss to be paid to that firm, "on cotton covering all shipments, etc., to attach from the time of purchase on all cotton for their own account or purchased for the account of . . . Thorndike Company," and many others named. This policy was in force at the date of the fire out of which this controversy grows. Bliss, Fabyan & Co. were commission mer-

chants of Boston, Mass., as well as the purchasing agents of the Thorndike Company, one of the members of the firm being also the treasurer of this latter company. This firm gave two orders to Charles Starrow & Co. for the account of the Thorndike Company. One of these orders was for the purchase of five hundred bales of cotton, and the other for one thousand bales. Instead of personally executing these orders, Starrow & Co., soon after receiving them, to wit, on the twelfth of October, gave an order to J. C. Graham & Co., their correspondents in the city of New York, to buy five hundred bales for Bliss, Fabyan & Co., and, on the fourteenth of October, another order to buy one thousand bales for the same firm. On this last named day, Graham & Co. wired the manager of the Chattanooga Cotton Compress Co. an offer to buy three hundred bales of cotton of a particular grade and at a fixed price, which offer was accepted by this latter company. This offer of purchase from Graham & Co. upon its face was made for themselves, and was accepted by the compress company as if they were the real vendees. The cotton to fill this contract of sale was brought from Alabama to Chattanooga, and was there by the vendor weighed, tagged, and marked, in order to identify it as the property which was the subject of this sale. While in this condition, and still in the possession of the compress company awaiting compression with a view to shipment, the defendant

railway company issued and delivered to the compress company its bill of lading, in which it acknowledged receipt of this cotton and fixed its line of travel. Acting under instructions from Graham & Co., the compress company made the bill of lading recite, "Consigned to order; notify the Thorndike Company, Thorndike, Mass." In a few hours thereafter, and while the cotton was still in actual possession of the compress company awaiting compression, the fire occurred that destroyed the one hundred and three bales in question.

Upon these facts the question of law is, was this cotton the property of the Thorndike Company at the time it was burned? Complainant rests its right to recover upon the theory that it was. It avers, in its bill in this cause, that it paid this company the net value of this property "in full of this loss," and distinctly claims, by this payment it "became substituted and subrogated to the right of" the company against the railway company. It is obvious, therefore, if, at the time of the fire, the Thorndike Company had no rights growing out of the destruction of this cotton which it could enforce against the common carrier, then the complainant must fail, "for, by subrogation, the insurer obtains no right which the assured could not enforce." *Lancaster Mills* v. *Merchants' Cotton Compress Co.*, 89 Tenn., 61; Sheldon on Subrogation, Sec. 269.

An examination of the statement of facts heretofore set out will show that the same is strikingly

defective in connecting the Thorndike Company with this purchase. The orders to purchase, referred to in this statement, did not come from that company, but originated with Bliss, Fabyan & Co. This latter firm placed these orders with Charles Starrow & Co. to purchase cotton "on account of the Thorndike Company," but the record is absolutely silent as to any authority to Bliss, Fabyan & Co. to so place them. It is equally defective in failing to furnish any evidence of the knowledge of the Thorndike Company of the purchase of this cotton until after it was destroyed by fire. But were it true that Bliss, Fabyan & Co. acted on the authority of their principal in giving these orders to Starrow & Co., yet so far as appears in this cause this latter firm had no right to delegate their execution to another. It is a "general principle that an authority to delegate a delegated authority will not be presumed when such delegated authority is regarded as a personal trust. Thus, inasmuch as a principal employs a broker from the opinion he entertains of his personal skill and integrity, a broker has no right, without notice, to turn his principal over to another of whom he knows nothing." Ewell's Evans on Agency, *40; *Cockram* v. *Islam*, 2 M. & S., 301.

Instead, however, of giving to Thorndike Company, as the law required them to do, the benefit of their skill and integrity in the discharge of their commission, Starrow & Co., without authority, employed Graham & Co., of New York, to fill their

orders—of whom, so far as this case shows, their assumed principal knew nothing—who executed them by purchasing the cotton, neither in the name of the Thorndike Company nor of their immediate principal, Starrow & Co., but in their own firm name. Now, on this record can it be claimed that the cotton burned was the cotton of the Thorndike Company? This question must be answered in the affirmative in order for the complainant to succeed in this suit. For it is to be remembered if this contract of purchase vested rights of property in that company, it would equally have imposed the liability of a vendee upon it. And can it be maintained on the facts found by the Court of Chancery Appeals that the compress company—Graham & Co. declining to pay for this cotton, and the conditions existing at the time of the fire remaining unchanged—could have recovered its purchase price from the Thorndike Company as the real vendee? We think assuredly not. The record failing to show any connection of the Thorndike Company with this purchase, or any consent, either express or implied, up to the time of its destruction by fire, to become the vendee of this cotton, complainants' policy did not attach and this suit must therefore fail.

It is proper to say that we do not think the notation made in the face of the bill of lading by the direction of Graham & Co., and heretofore set out, or the statement in the answer which complainant relied on as an estoppel upon the railway

company on this point, can in any way be held to affect this conclusion. While resting our opinion upon a different ground from that taken by the Court of Chancery Appeals in disposing of this case, we have reached the same result, and their decree is therefore affirmed.

### OPINION ON PETITION TO REHEAR.

BEARD, J. This case is before us on a petition for rehearing, in which it is insisted that the Court of Chancery Appeals found as a fact, that the title to the cotton in question was in Thorndike & Co. at the time of the fire, and that this finding of fact was conclusive on this Court. If that Court had found this as a fact, it would have been conclusive; instead of this, however, they found the facts as set forth in our original opinion, and, upon these, concluded that the ownership of this cotton was in Thorndike & Co. This, as we held, was a conclusion of law, in which we differed with them. Our own conclusion on these facts was deliberately reached, and we see no occasion to change it.

But it is said that the Court of Chancery Appeals report "that by the course of dealing and understanding between the parties, the cotton in question became the property of Thorndike & Co. as soon as purchased," and that this finding at least is conclusive of ownership. This contention would

be sound but for the fact that the Court of Chancery Appeals in their opinion state distinctly that the orders for purchase originated with Fabyan, Bliss & Co., and give the names of the various parties through whom they passed until filled, and, in their recital, fail altogether to connect Thorndike & Co. with either the orders or subsequent purchase. So that, when they report that it was the understanding of the parties (and their course of dealing), that this cotton was the property of Thorndike & Co., this statement is to be limited to the parties so named, and cannot, in the face of their finding, be held to include this latter firm. We are satisfied that the opinion, by necessary implication, negatives the present contention of complainant. The petition for rehearing is therefore dismissed.