O. T. ROEHL et al. v. CHAS. L. HENCK et al.,

and

K. A. PAINE et al. v. CHAS. L. HENCK et al.

Eastern Section.    April 17, 1926.

Petition for Certiorari denied by Supreme Court, January 3, 1927.

1. **Mechanics' liens. Where property has passed into the hands of another, contractor is not entitled to a lien for profits figured on a cost plus basis.**
   In an action to recover for materials and profits and to establish a lien against the building where it appeared that before the building was completed the owner was unable to make the payments and the contract was broken and the building never completed and it further appeared that the property had been transferred to another party, held that under Shannon's Code, sections 3531 and 3538, the contractor could not have a lien for the amount representing profits under a cost plus contract.

2. **Estates. Merger. To effect a merger of estates they must come together in one person at the same time and in the same character or capacity.**
   Where a party held a lease upon certain real estate and later secured a deed to the fee the deed being taken upon the understanding that it was merely for the purpose of permitting him to secure a loan to pay for the property, held that the leasehold and the fee would not merge giving the holder of the leasehold a fee because he simply received the title to the fee in trust, there being no intention to create a merger.

3. **Mechanics' liens. Mechanics' liens held to attach to leasehold and not to the fee.**
   Where at the time the contract was let, on which the mechanics lien was sought to be established, the party held only a leasehold estate, but thereafter acquired a deed to the property in connection with a parol trust, held that the party did not acquire the fee so that the lien would attach and defeat the beneficiary in the parol trust, but that the lien attached only to the leasehold.

Appeal from Chancery. Court, Knox County; Hon. Chas. Hays · Brown, Chancellor.

Modified, affirmed and remanded.

Frantz, McConnell & Seymour, of Knoxville, for Roehl.

A. Y. Burrows and Green & Webb, of Knoxville, for Henck.

Lee, Price, McDermott & Meek, of Knoxville, for K. A. Paine.

SNODGRASS, J. These consolidated causes were each brought to enforce an alleged mechanic's lien on the same property, on which a three-story brick building had been partially constructed in the City of Knoxville, on what is called Lots 7 and 8 of Central Market Company's property, and which was more particularly described in the bill.

Complainants O. T. Roehl and H. A. Gervin, partners under the name and style of Roehl & Gervin, filed the first bill 'against defendant Chas. L. Henck, the alleged owner, and later amended the same, making the other defendants, G. M. Lewis, J. C. Jett and J. A. Plemmons, trustees of Golden Rule Lodge No. 177, Independent Order of Odd Fellows parties, to whom the bill alleged the property had been transferred by the first named defendant on May 2, 1924, after, it was alleged, the first defendant had breached his contract, and upon whose direction the work on the house was discontinued on April 18th preceding.

This bill claimed an original, and later an increased contract price of $34,634.50 plus ten per cent profit, and averred that under the contract the house was to be completed on June 1, 1924, but that on March —, 1924 the time was by written agreement extended fifteen days; that estimates were to be furnished by complainants to defendant, and that defendant was to pay eighty per cent of the estimates immediately; that complainants began, continued and carried out said work according to contract, and furnished said estimates according to contract; that defendant admitted the estimates were due, but wholly failed and refused to pay the same, and thereby breached the contract with the complainants; that he admitted such breach, and that he was wholly unable to pay same or to finance the construction of said building; that the work on the same was stopped on the 18th day of April; that complainants stood ready to complete same in accordance with the contract, but that they had been served with notice by the defendant that he was unable to complete the contract or pay the estimates. Complainants averred, therefore, that they were unable to complete said building, and that they had fully complied with their contract; that defendant had accepted possession of same uncompleted on account of his inability to finance said work, and admits that his acceptance and possession of said building is subject to the lien of

complainants for work and materials furnished and labor done incident to said work under said contract; that they have waited patiently since the 18th day of April, 1924 in vain; that although they have been constantly urging defendant, and have notified him to make payment, that he has failed to do so. The bill averred that the actual cost of that part of the building which had been completed and the amount then due for work, labor and material was $16,145.68, and the profit of ten per cent thereon, which complainants averred they were entitled to, made in all the sum of $17,760.25, on which judgment was asked, and for which was claimed a mechanic's lien on the property. The lot of ground was then particularly described, and it was averred that the same had been conveyed to the defendant by warranty deed dated February 22, 1924, by the other defendants, and that the deed was recorded in the Register's office of Knox county, Tennessee, in Deed Book 387, page 328.

The amended bill, after reciting the filing of the original bill and much of its substance, averred that on May 2, 1924, the defendant, Chas. L. Henck, executed a quitclaim deed to the other defendants, trustees of Golden Rule Lodge No. 177, Independent Order of Odd Fellows, conveying all his right, title and interest in and to said property, and reciting the fact that the said trustees of said lodge conveyed the property to the defendant Henck by said deed dated February 22, 1924, under an alleged parol trust, which was made when said deed was delivered, said parol trust being that the said deed was delivered for the sole purpose of enabling the defendant to obtain a loan from a trust company, and to mortgage the fee and secure money to be used to finance the construction of said building upon said property, and that said quitclaim deed was filed for record on May 2, 1924, at 3:16 p. m., and was recorded on May 5, 1924.

It was averred that the complainants did not know of said alleged parol trust, but were informed and believed, and therefore charge, that when they contracted with the defendant he. had acquired the legal title to said land described in said deed, and it was denied that said deed was delivered upon any parol trust of any kind; that said quitclaim deed recites that the said deed to defendant was not delivered until April 11, 1924, at which time it was delivered in accordance with said alleged parol trust agreement; but it was denied that this was true, and they averred that said deed was delivered immediately after it was acknowledged. However, it was averred that it was immaterial when said deed was actually delivered; that it was said that when delivered the title was in defendant and related back to the date of the execution of the deed; that said deed recited a consideration of $9,000 as paid and received by the said lodge

It was further averred that prior to the date of said deed to the defendant a meeting of the lodge was held and a resolution passed authorizing the sale of the property in accordance with said deed; that in fact the deed was not only executed by all the trustees, but also by L. L. Livesay, Noble Grand, and J. T. Smith secretary of said lodge, and they acknowledged the same upon oath, and after certifying that they are the trustees, and the Noble Grand and · secretary of said lodge, they certified that they had executed the deed by the authority of the membership of the lodge, it being incorporated, by resolution voted upon at a meeting of the members of said lodge duly called on the 15th day of February, 1924, which it was averred is four days prior to the original contract of the defendant with complainants.

It was further averred that when the work and labor was done and the materials furnished the legal title to the property was in the defendant free and clear of any and all incumbrance, excepting the lien of complainants. It was claimed that if the deed had been delivered under an alleged parol agreement, that it would not affect the rights of the complainants, because it was alleged that they were not advised of said parol trust, and that the said lodge allowed them to do said work and furnish said labor and materials without notifying them of said alleged parol agreement, but it was denied that such agreement was made when said deed was delivered.

It was further averred that insofar as the rights of complainants were concerned, and their lien upon the property, the said lodge was precluded from setting up a parol trust and varying the terms of a written deed, against which an estoppel was pleaded.

It was further averred that said quitclaim deed recited that the defendant had a leasehold interest in said property prior to the execution of said deed to him; that if as a matter of fact the defendant ever had a leasehold interest in said property that complainants were not aware of the same; but that even if defendant only had a leasehold interest in the property when the original contract was made on February 19, 1924, which was denied, it was averred that defendant thereafter acquired the legal title and owned the property in fee when the work was done and the labor and materials furnished.

It was further averred that complainants filed this amended bill on account of the fact that the title to said property was quitclaimed to the trustees of said lodge on the same date the original bill was filed, and for the purpose of making said trustees, and the Noble Grand and the secretary of said lodge defendants in the cause, and without waiving the attachment heretofore levied, and for the sake of caution only, prayed for an attachment to be

issued and levied upon the same property as the property of said lodge, and averred that said quitclaim deed was made, and is, subject to their lien for the work done and labor and materials furnished incident to their said contract with the defendant Henck. They prayed as in the original bill for an attachment, and for a decree against the defendant Henck, and for a lien against the property described in the original bill, that it be sold, etc., etc.

On May 9th complainant Paine, under the trade name of Heat-Rite Heating Company, filed his bill against all of the defendants, asking a decree against defendant Henck for a balance of $2,314.89 as the plumbing and heating contractor on said building, under a contract made with the said Henck, claiming complainant had furnished estimates, but that defendant, had failed and refused to pay the same; that defendant had breached his contract, and that on April 18th work on the building was stopped and the original contractors, Roehl & Gervin, notified by defendant that he was unable to complete the construction of said building and unable to pay the estimates, and had agreed to accept the building as uncompleted; that defendant admits that complainant's debt is justly due, owing and unpaid, and that the same was a lien upon the property upon which improvements were erected.

The bill then described the property and averred that it was conveyed to defendant by warranty deed dated February 22, 1924 by G. M. Lewis and others, recorded in the Register's office of Knox county, Tennessee, Book 387, page 382. He alleged that he was entitled to a lien thereon, asked for an attachment, and stated he had just learned that defendant Henck had quitclaimed the property on May 2, 1924 to the other defendants, by deed recorded in Book 310, page 284, but that complainant's claim and right of lien are superior to the rights of said trustees. The bill prayed for all appropriate relief.

It is proper to state that under the prayer of the original bill an attachment was issued and levied upon the property, and that while the amended bill, not waiving said attachment asked for another attachment, a fiat for which was granted, in lieu of its issuance and formal service, presumably to save costs, the defendants, the trustees of said lodge and the Noble Grand and its secretary, entered their appearance in said cause, reciting that they "now come by their solicitors, enter their appearance in said cause, and consent that subpoena to answer and a copy of said amended bill not be served upon them, but that their appearance have the effect of said service upon them; and the principals and surety on the prosecution bond and the attachment bond filed on May 2, 1924, having appeared and consented that said bonds be amended of record so as to include said new parties, so that a new prosecu-

tion bond and attachment bond will not have to be filed; and said G. M. Lewis, J. C. Jett and J. A. Plemmons, trustees, and L. L. Livesay, Noble Grand and J. T. Smith, secretary of said lodge, consent that the said attachment issued and levied on May 2, 1924 when said original bill was filed, be extended and amended so as to have the effect of an attachment issued and levied upon the property under the fiat directing the issuance of a new writ as prayed for in the said amended bill; and that the complainants not be required to have issued and levied a new attachment under said bill; and it is so ordered, adjudged and decreed by the court.''

Notwithstanding the foregoing order some question is sought to be made in the brief and assignment as to the levy of any attachment upon the property, though it may have been meant only to claim that no attachment was available against the defendant lodge until after they were made parties, and, consequently, after the date of the quitclaim deed, but it thus appears that attachments were issued and levied as of the dates indicated.

Answers were filed to the bill and amended bill, and also to the bill of the plumbing contractor, by all the defendants except Chas. L. Henck, against whom pro confessos were taken, challenging the right of either to subject the property to such liens upon grounds which will be noticed further in the progress of this opinion, and especially claiming that in any event the liens claimed by complainants were not superior to the right of defendant lodge to be reimbursed as a first charge the sum of $9,000 with interest out of the property which had been conveyed to defendant Henck, impressed, as it was, with a parol trust to get means to finance the construction, from the proceeds of which it was to be paid the $9,000 alleged as the purchase price of the property.

Proof was taken and the cause went to trial before His Honor, the Chancellor, who sustained the bills as to the claims against the defendant Chas. L. Henck, except as they were modified by agreed sums credited upon withdrawals of material and expenses incurred in the conservation of the property, and a decree was rendered in favor of the complainants Roehl & Gervin against defendant Henck in the sum of $17,496.46, including interest, as the value of work done and material furnished, and the further sum of $1,703.08 as ten per cent profit on such sum; and in favor of complainant Paine or Heat-Rite Company against said defendant in the sum of $954.49, including interest.

These sums, with the exception of the sum of the ten per cent profit, were made liens upon the property described in the bills, which was ordered sold upon credit of six, twelve, eighteen and twenty-four months, unless the sums decreed against same as liens be paid into court within thirty days; and in the event of sale the

master was directed to take notes, with security, bearing six per cent interest, and retaining a lien upon the property. Any lien as to the item of ten per cent profit was declined and disallowed. Out of the proceeds of the sale the master was directed to first pay the costs of the causes, and then pay complainants the amounts due them on this decree, and the remainder, if any, to the defendant trustees and officers of the lodge; and that if the proceeds of the sale should fail to satisfy the decree, that an execution should issue against the defendant Chas. L. Henck in each case for the balance unpaid.

The defendants, trustees and officers of the lodge, etc., excepted to the decree and prayed an appeal to the next term of the Supreme Court, which was granted upon giving sufficient appeal bonds, but it was ordered that they would not be allowed to perfect said appeal until after the sale therein ordered had been made.

Complainants Roehl & Gervin also excepted to the action of the Chancellor in declining to decree the personal judgment for $1,-703.08 a lien upon the property and likewise prayed an appeal, which was granted upon the giving of sufficient bonds, but postponed until after such sale had been made.

A sale of the land was reported to the next term as having been made to one T. E. Burns, at the price of $23,150, who had, it was reported, complied with the terms of sale, which was confirmed to him, no exceptions having been filed.

Whereupon the appeal of the defendant trustees and lodge theretofore granted was perfected by the execution of a bond. The complainants did not perfect their appeal, but filed the record and obtained a writ of error, and the cause, being properly in this court, both have assigned errors.

While there are eighteen assignments of error made by the defendants (who will be designated hereafter as the lodge) they relate mostly to the processes by which the Chancellor arrived at his conclusion. Every one of these assignments can be, and is, included under the eighteenth assignment, that

> "Under the facts of this cause the Chancellor erred in awarding mechanic's liens against the property."

So far as the other questions are concerned there is really no contest, nor could there be any doubt, under the facts, if there had been. It is abundantly shown that there was due from the defendant Chas. L. Henck the sums claimed, and for which they obtained the decrees against him as the value of the work done and material furnished in the construction of the building. The defendant Henck having admitted the justice of the ten per cent personal judgment, and pro confesso having been taken against him, the other defendants are not concerned as to that, except as the

same is sought to be made a lien upon the property; and as to this contention we agree with the Chancellor, that under the circumstances of this cause there existed no lien in any event as against defendants lodge and trustees for the item of profit of $1,703.08. The defendant Henck by simply confessing that there existed a lien for such item could not enlarge the statute, especially when it is sought to enforce the lien against the property of others, nor estop such others from insisting that the lien must be confined to the provisions of the statute. When the judgment of the law is claimed as the measure of the liability, there cannot be superadded a concession as the basis of the claim. The statute itself provides:

"There shall be a lien upon any lot of ground or tract of land upon which a house has been constructed, built or repaired, or fixtures or machinery furnished or erected, or improvements made by special contract with the owner or his agents, in favor of the mechanic or undertaker, founder or machinist, who does the work, or any part of the work, or furnishes the materials, or puts thereon any fixture, machinery or material, either of wood or metal, and in favor of all persons who do any portion of the work or furnish any portion of the material for the building contemplated in this section." Sec. 3531, Shannon's Code.

Section 3538 provides: "Each mechanic so employed shall have this lien in proportion to the amount and value of the work he does or the materials he furnishes."

This lien is therefore regulated by the amount and value of the work done and materials furnished, and not by any supposed profits contracted for. It is proper to state, also, that the contract does not provide especially for profits, but for a specific sum, and while, other considerations being out of the way, and had the work been completed under the contract, Chas. L. Henck, had he then been the owner, might have been estopped to deny the sum of $34,634.50, the original completed contract price, as the agreed valuation for work and labor done and materials furnished, even though that sum may have contained profit, yet we do not think such a rule of estoppel can be invoked in the circumstances of this cause so as to add a ten per cent as profit to the valuation of a partially completed structure, upon any supposed idea that there would have been a profit. Rather would this be, we think, in the teeth of the statute, which custom cannot overthrow. We do not think the case of Murphy v. Bear, 240 Pa., 448 is in point in this case, or in anywise in conflict with this holding.

Taking up first, therefore, the single assignment of error made by the complainants, Roehl & Gervin, that

"The Chancellor erred in holding that the complainants were not entitled to a lien upon the property for the sum of $1,703.-

08, being a profit of ten per cent upon the amount which the labor and materials actually cost the complainants, and six per cent interest thereon from April 18, 1924," the same is overruled as against defendant lodge, but sustained on his concession as against defendant Henck.

No personal judgment was sought or had against the defendants trustees or lodge, and the only question to be determined is, as to whether their action with respect to the title to the property has permitted the liens of the complainants to attach to the fee therein superior to any claim that might be urged by the lodge in respect thereto:

It is proper also to state, which has hereinbefore been omitted to be done, that by order of the court the answer of the defendants' lodge and trustees was permitted to stand as a cross-bill, praying for proper protection and enforcement of their rights, which answer was in the same order traversed.

The Chancellor found that the defendant Chas. L. Henck entered into a contract with the complainants Roehl & Gervin for labor and materials, which were necessary, and which entered into the construction of the brick building upon the premises described; and that he also entered into a contract with the complainant Paine for the labor and materials necessary, and which entered into a steam heating plant installed in said building; that the defendant Chas. L. Henck was the lessee of said premises, but prior to February 15, 1924, he entered into a contract to purchase said premises, and did purchase the fee-simple title to said premises; that on February 22, 1924, in accordance with the agreement of sale which had been made, a warranty deed was executed by the lodge to the said Chas. L. Henck, and that there was a merger of the leasehold into the fee, and that said leasehold was extinguished; that complainants are entitled to liens upon the fee-simple title to said premises, and that when the said defendant Chas. L. Henck sold the premises to the defendant lodge and executed the quitclaim deed on May 2, 1924, the said trustees took title to said premises subject to the liens of the said complainants, and it is therefore ordered, adjudged and decreed, etc. Then follows the decree subjecting the property, which was described in the deed, to the liens, and the further proceedings as hereinbefore indicated.

While we do not agree with the Chancellor as to the time the contracts took effect, and as to the scope and effect of any deed or deeds that were executed subsequent to the builders contract being signed, a clear understanding as to the exact facts, as near as may be, is essential to a proper application of the principles governing the results, which we will endeavor to state, and in which our disagreements will mature. Here it might be claimed

that the facts themselves, as they have been detailed, are involved in some apparent confusion, and also obscurity, because others that might have shed light upon the transactions were not called.

Negotiations for the purchase or lease of the property by the defendant Henck from the lodge began previous to the 28th day of November, 1923, and which resulted on said date in the execution of a lease by the lodge to defendant, which lease is filed as Exhibit "A" to the answer of G. M. Lewis and others. This lease, though not recorded, and in the possession of the defendant Henck, was thought by him a sufficient basis for financing the project of the building, and by an inspection of the same it will be found to have sufficiently guarded the interests of the lodge, and would have sufficiently indicated to complainants, had they demanded to see it, that the leasehold was the only thing they could properly look to upon which to fasten any mechanic's lien, in the event it should become necessary to resort to that as security. An examination of the records also would have disclosed that the lodge, with the exception of said lease, owned the property at the time the contract was signed, February 19, 1924, at which time the defendant Henck only owned the ninety-nine-year lease.

While the defendant in the enthusiasm of the early stages of a Colonel Sellers scheme to build this castle in the air had advertised for and obtained a number of bids for the erection of the building, among them two certain from the complainants, and one also from Mr. Lewis, one of the defendants, he had in his investigation run up against some hard headed bankers, whose cool, calculating judgment often punctures the tires of our inflated enthusiasm, and had become convinced of his inability to get money on such a lease; but having inaugurated an amendment of the scheme with the lodge, he was willing, and they (the contractors) were willing to, and did sign up a contract for the construction of the building, but it was not to be a go or binding until he could complete his financial arrangements.

The contract was signed tentatively and around March 3rd became effective, when they went to work, until which time, Mr. Roehl stated, they were "waiting defendants final answer as to going ahead with the work, after he stated he wanted us to hold off until he could make all arrangements—make his financial arrangements." It appears, however, from the proof in the case, that the only financial arrangements he had made when he started them to work, was that he had effected a tentative arrangement with the owners of the fee to substitute a new arrangement for the ninety-nine-year lease, provided money could be raised from the Bankers Trust Company, which the defendant lodge and trustees had been assured by the defendant Henck could be done if such a pledge of the fee-simple title could be made to it.

Right here a good deal is left to inference, the deposition of neither the defendant Henck nor any of the officers of the Trust Company having been taken. When the contract was tentatively signed on February 19th, defendant Henck had found, as stated, that he could not get along with the raising of funds simply as owning the lease, and previous to that he had taken up a change of the arrangement by which he was to become invested with the title to the property, in order that it might be pledged to the Trust Company absolutely, as security for the contemplated and expected loan, if he could effect it. On February 15th the deed which partially evidenced such change was authorized by the said lodge, and on February 22nd it was signed, and acknowledged on February 23rd. But this deed appears not to have been delivered until April 11, 1924, according to the testimony of Mr. Burrows, and also a recitation of the quitclaim deed of May 2, 1924. Against this it is argued, however, that the presumption should obtain that it was delivered on the day it was executed, especially as this alleged date of delivery was interlined in ink in said deed after it had been prepared in type, reciting that it had been executed on the 22nd, etc. However, it was testified by Mr. Burrows that the recitals were the truth, who also testified that said deed was as a matter of fact delivered by him to defendant Henck on said date, on the conditions which he had endeavored to outline. And it appears also that such recital was there when the deed was recorded. Therefore, unless we are authorized to wholly disregard the testimony of Mr. Burrows, which we do not think we are authorized to do, we must find that at the time Henck told the parties to go ahead he did not have the legal title to the property, and had not bought it, as he claimed to the complainants. But he only had a tentative agreement with the lodge and trustees that, if he could borrow the money from the Bankers Trust Company, then they were to deliver him the deed, or he was authorized to so mortgage the same to said company; and in that event it appears that there was to be a change also from the lease contract, by which the defendant Henck was to become the owner of the property, and the defendants lodge and trustees were to have the consideration of $9,000 paid them, and the first ten years rent free, after which they were to pay a rental of $50 per month for ten years, and the rentals were to be ten-year periods at $50 per month. This being a change from the terms of the lease contract, is evidence that it was designed also to take its place if the loan could be negotiated. Before the delivery of such deed, and thinking the Trust Company would accept the security in this form, he told the parties to go ahead, but later found that the Trust Company was still unwilling for some reason undisclosed to accept the security in the form and for which purpose alone it

had been arranged. We think this is why the deed was not delivered earlier, and we think the reason why it was delivered as late as April 11th is, that after Mr. Henck had fallen down with the Trust Company the second time, notwithstanding his ability to furnish the security of the warranty deed, the parties having gone to work, in a last and persistent effort to find the means, he had applied to Adolph Schmidt. At least after the complainants had furnished their first estimate upon which the eighty per cent was due, defendant Henck told them, or at least told the complainant Paine, that he had fallen down with the Trust Company and was negotiating with Schmidt. Mr. Paine said:

"I understood him, after the first estimate became due I went down there. He said he was going to be able to pay it the next day or two. He told us he was to put it up and the Odd Fellows were to have the third floor for ten years, and after that he was to have the whole thing. He said the Bankers Trust Company had turned him down, and that he was negotiating with Adolph Schmidt."

On this point the testimony of Mr. Burrows is a little confusing, or incomplete. We think the record shows that there were two failures with the Trust Company. The first one was when negotiations were opened, when defendant Henck thought the money could be secured only upon the lease. The second was after he had prepared himself with the promise of the title and had the deed executed preparatory to delivery. Mr. Burrows was asked:

"Q. Now why was it, Mr. Burrows, this deed was not delivered until April, 1924? A. Because he had represented to us, and he had made arrangements under the leasehold, or under the lease contract to finance it, and it was one or two days previous to the delivery of that deed that he represented to us that, as he expressed it, the Bankers Trust Company had laid down on him."

This is the explanation that does not explain, unless when the deed was delivered it was for the purpose of enabling him to negotiate the loan elsewhere if he could, presumably with Schmidt, whom he represented to complainant Paine he was trying to negotiate with about that time or a few days before. He was then interrupted and his attention directed to the first phase of the effort, to which he testified in a manner as to create some confusion as to dates and purpose of the delivery, and leaving the question in doubt as to whether or not the original purpose was to give him authority to negotiate and mortgage the property only with the Bankers Trust Company, or with anyone who was able and willing to furnish the money. But whether the deed was delivered on the 11th of April for the purpose of negotiating a loan with the Trust

Company, or with anyone else, it was not to be recorded, so Mr. Burrows testified, until the defendant Henck was assured beyond any doubt that he was going to get the money.

We find, therefore, that the warranty deed dated February 22nd was not delivered until April 11, 1924, and that it was not to take effect then, and be recorded, except on condition that defendant Henck should successfully negotiate a loan with which he could finance the building, and after, and out of which, a first charge was to be paid to the defendant lodge or its trustees in the sum of $9,000; that said deed was delivered to him on said date impressed with this trust, in violation of which it was placed of record.

"It is well settled that proof by parol cannot be heard at law to vary, enlarge or diminish the stipulations of a written contract, yet it may be heard to show whether such contract was in fact made, or whether only upon certain contingencies it was to take effect." Brady & Co. v. Isler, 9 Lea, 357; Bissenger v. Guiteman Bros. & Co., 6 Heisk., 277; Breeden v. Grigg, 8 Baxt., 163.

A deed, absolute on its face, may be shown to be a mortgage. Mary Nichols et al. v. T. J. Cabe et al., 40 Tenn., 63.

For the foregoing reasons also there was no merger as a matter of fact of the leasehold with the fee. In sec. 321, page 228 of Tiedman on Real Property, it is said:

"To effect a merger of interests they must come together in one person, and at the same time, and in the same character or capacity. A conveyance of the equity to a trustee of the mortgagee, or to the mortgagee as trustee of another, would, in neither case, cause a merger. It is also a general rule in equity that the union of the two estates in one person will not be permitted to work a merger, where, from the circumstances, an injury would result to the parties interested in either. . . . And this is almost a universal rule, that equity will keep alive the mortgage in the hands of the holder of the equity whenever its merger would do injury to one in any way interested therein. Where, however, it is the plain intention of the parties that a merger should result from the union of the interests, equity will not interfere in their behalf."

And for the same reason, where it is the intention that a merger shall not result, or only for a conditional purpose, equity will prevent a merger if such purpose fails.

It being only the purpose of the quitclaim deed to cure the registration of the conditional deed and to reinvest the defendants lodge and trustees with the apparent title which the record evidenced, and not to transfer the previous leasehold estate, the fee was not conveyed by it. In other words there was no merger, nei-

ther with the execution of the deed of February 22nd, nor of the quitclaim deed of May 2nd.

It is unimportant, therefore, that there may have been a previous executory agreement to convey. There was none such to convey unconditionally the fee, and the condition upon which the fee was to pass, never having happened, no fee vested, and the Chancellor was therefore in error in holding that the defendant Henck had purchased the fee-simple title on February 22nd, or at any other time, and in holding that there had been a merger in which the leasehold had united with the superior estate.

As a matter of fact when the contract went into effect about March 3rd, the only title that defendant Henck held was the lease, and an agreement that, if he could do so, he was to mortgage the fee to get funds to pay for such fee and complete the building; and so far as the complainants are concerned their contract was to construct the building upon the leasehold, though they supposed, from defendant Henck's statement, that he had bought the lot. To the extent the Chancellor held otherwise we think he was in error.

So far as the estate held by the defendants lodge and trustees is concerned, the defendant Henck never owned either the legal or the equitable title. After the delivery of the deed on April 11th, while the estate by such delivery did not merge, he held the title of the lodge to its moiety of the estate upon condition that he could negotiate a mortgage only, and failing to do that, title never became vested or merged, or if so it was in a trust form, and the title of the lodge or trustees did not become lost to them or their right inferior to the lien of the complainants, which existed only against the leasehold.

The case of Ragon v. Howard, 97 Tenn., 333, is not in point. In that case Howard became the owner of the entire equitable estate, under a contract which authorized and contemplated his building a house upon the property. As held, his ownership was therefore under the statute sufficient to dispense with the notice which was required when the claimant's contract was not with the owner in order to perfect the lien.

In the case at bar there were two distinct interests in the same property. There is no question but what the mechanic's lien attached to the leasehold owned by the defendant Henck, but as the defendant Henck never owned either the legal or the equitable title that remained in the lodge or trustees, no reason is perceived as to why the lien should attach to their estate, especially as no attachment was served upon it previous to the return of the same to its owner, if as a matter of fact it had merged by the deed of February 22nd. The lodge or the trustees should not be held to lose their property simply because they evinced a purpose to aid the de-

fendant Henck, if they could do so without imperiling their property, by changing the form of the contract so as to enable him to pledge the fee to get money to pay his contractors. The only thing that was unguarded or to be criticized in their conduct, as we see it, was in the delivery of the deed on April 11th in its absolute form, which without notice of the trust might have misled the complainants had they seen it and then been advised by the defendant Henck that he owned it, and by this action have misled the complainants into putting improvements upon the property. Such action would have estopped the lodge from claiming any superior right in the property, and in equity would, and should, have made the lien of the contractors superior. But this was not the case. When this deed was delivered on April 11th the work had practically all been done, and that, too, simply upon the statement of defendant Henck that he had bought the lot to make a loan upon it. If this statement implied any title in fee to the lot, it was false, and might have been ascertained to be so had inquiry been made; for at the time no such statement had been authorized, nor could authority to make it have been implied by any action of the defendants lodge or trustees. If any work was done on the building after the delivery of such deed, it is not shown to have been done upon the inducement of the same, and consequently no reason is perceived why the conditional and trust character of the deed may not have been effective as against complainants to prevent their lien from attaching to the property rights owned in said lot by the said lodge.

We are not prepared to say that any duty rested upon the lodge or its trustees to notify the complainants of any fact regarding the title of which it was their obligation to inform themselves. Such a holding would be to cast upon the lodge or its trustees an obligation somewhat in the nature of guardianship, which they never assumed, nor was it imposed upon them by any situation shown in the proof. Possession of the property by defendant Henck was entirely consistent with and incident to a ninety-nine-year lease, nor was there involved in it any guaranty that Henck should state the truth as to any representation he might make as to the character of his ownership. If he at the time he represented that he was owner of the lot, had had the warranty deed in his possession and have exhibited it, even though unrecorded, that would have been a sufficient apparent authority for such claim, relieving the complainants perhaps from inquiring any further. Then indeed such parol trust, without notice, would not have been binding upon complainants had they proceeded upon such assumption of fee-simple ownership. But it was negligence upon the part of the complainants to have taken his word alone, without some further showing of apparent authority from such owners.

The assignments of error of the defendants lodge and trustees are therefore sustained, though as to assignment No. 10, not for the reason which is assigned as supporting it; and as to assignment No. 12, for the reason that no lien attached to the lodge property.

It results, therefore, that the decree of the Chancellor must be reversed, and the mechanic's.liens confined alone to the ninety-nine-year leasehold. The sale had of the property will be set aside, and the cause remanded to the chancery court in order that the leasehold interest may be sold for the satisfaction of such liens, including also the lien for $1,703.08, which was conceded to be a lien by the defendant Henck.

However, he who seeks equity must do equity. It appears from the proof in the case that it was impracticable or impossible to have raised the funds that were necessary to complete the building upon the leasehold alone; that had defendant Henck succeeded in negotiating the loan under the form of the deed, defendant lodge was only to receive of the funds $9,000, and the right to the use of the third floor rent free for ten years rested in the contract of defendant Henck, and, therefore, in his ability to guarantee such a consideration, as inevitably the negotiation ·of a mortgage on the property under the form in which the deed was delivered to him would have caused such mortgage to have taken precedence of this rental consideration. It would therefore not be inequitable to relegate the defendants lodge and trustees to their action against defendant Henck for whatever damages they may sustain by any failure due to contract or fault of his for this loss of such rental, and to provide that, in case the complainants prefer, their rights will be transferred to the fund that has been realized in the property. That is to say, out of such funds the lodge and trustees will be paid the sum of $9,000 as the value of their lot fixed in such deed, and the remainder devoted, first to the satisfaction of the costs, and balance to the satisfaction of complainant's liens, in the proportion in which they have been established, and as thus modified the decree of the Chancellor affirmed.

Otherwise a decree will be entered as first indicated, complainants paying the costs of this court and all costs incident to making the lodge and trustees parties, and any remaining costs will continue as adjudged by the Chancellor.

Portrum and Thompson, JJ., concur.